PETTY, Plaintiff, v. DAYTON MUSICIANS' ASSOCIATION, Defendant.

Common Pleas Court, Montgomery County.

No. 111352.   Decided February 24, 1958.

G. E. Miller, Dayton, for plaintiff.
F. W. Howell, M. E. Schlafman, Dayton, for defendant.

## OPINION

By McBRIDE, J.:

The plaintiff alleges in his amended petition that he was the agent, or personal representative, of various musicians, most of whom were members of the defendant musician's association, Local 101, American Federation of Musicians; that in December 1955, the defendant association published and distributed to its members a notice not to accept or negotiate contracts from plaintiff, a former sub-booking agent. Plaintiff then characterizes the "above complained of" and "said action" as willful, unlawful and malicious, and requests damages for loss of his means of earning a livelihood in the amount of $20,000.00.

By answer the defendant admits the publication of its notice to its members and claims privilege. Defendant further admits that plaintff was a sub-booking agent and that it is true that this relationship was terminated under its rules.

By reply, plaintiff denies "he was solely a sub-booking agent," denies that the American Federation of Musicians was the organization which forbade defendant's members from doing business with him and denies any privilege as asserted by the defendant.

The case was submitted to the court on a motion for judgment on the pleadings.

After this matter was argued and submitted on the motion for judgment on the pleadings the plaintiff filed a second amended petition without leave of court and to this second amended petition no action has been taken by the defendant or by the court. Under these circumstances, the issues having been drawn, the court disregards the second amended petition. It may be noted by way of dictum that it appears that the only change is an allegation that the notice alleged was published and distributed not only to the membership but "to other persons." In view of several decisions in which similar notices were mailed to third parties, it does not appear that the change in the second amended petition is significant.

Since the first impression of the court, when this case was submitted on motion to the original petition, was that it sounded in libel it should be pointed out that the basic right claimed here is interference with the right of contract by a third party. The pleadings fall short of a libel action. The words used are not actionable. The words are not claimed to be false. The plaintiff admits their veracity, the only issue in that respect being injected by way of reply in which plaintiff denies that the national organization, the American Federation of Musicians, not a party here, took any action. The plaintiff does not deny in his reply that his relationship was terminated by the defendant union.

The character of the defendant's statement is such as to discourage the membership from doing business in the future with a person no longer recognized by the union. 33 Amer. Jur. 83, 30 Amer. Jur. 95.

The petition alleges publication only to defendant's membership,

thereby raising the issue of qualified privilege. This admission is not qualified by the reply which by inference appears to argue that the publication may have reached others. The plaintiff is precluded by his amended petition from arguing publication outside of the membership.

That the amended petition seeks to allege a tortious interference with plaintiff's right to contract, and not libel, is apparent in the third paragraph in which plaintiff uses the conclusion of interference in two separate instances. The court finds that the plaintiff is not entitled to relief on the basis of libel, and this finding was agreed to by plaintiff in oral argument.

Interference with the right to labor or to contract is recognized as a distinct tort which in recent years has been given separate consideration. See 15 R. C. L. 41; 30 Amr. Jur. (95) 55; Labor Unions by Dangel and Shriber (1941), Chapter XVII on Interference with Employment, 55, 505, 520; **Railroad v. Schaeffer, 65 Oh St 414** (blacklisting by employer).

It is not necessary to discuss the general aspects of this right of freedom from interference since the authorities generally recognize the equal if not superior right of union organizations in the interest of its membership to take steps appropriate and lawful to accomplish its purpose. Some authorities consider the right of the union "privileged" and others consider it an equal or superior right justifying acts not in themselves unlawful. The effect under either theory is to destroy any cause of action and prevent a right of recovery.

The following comments are pertinent to the subject of interference with employment of a union member by the union:

"A union member has no more right than a non-union member to complain of hardship caused to him through interference with his employment when the union acts lawfully. A union commits no wrong if under its constitution and by-laws it is given the power and right to take action reasonably calculated to advance its objects, even if such action involves interference with the employment of a member. The courts can give no redress for hardship to the individual which results from action reasonably calculated to achieve a lawful end by lawful means. It is not within the discretion of a court to enjoin the enforcement of the proper rules of a labor union. Voluntary orders by a labor union for the benefit of its members and the enforcement thereof within the union do not constitute 'coercion' because the members who are unwilling to obey the orders are free to withdraw from the union."

"Where it is essential for a member to remain in a union in order to gain employment and the union illegally expels him, or refuses to recognize him as a member, he can recover for the wrong done him in depriving him of the means of earning a living. His right to follow a lawful occupation under existing conditions will be protected by the court. He can recover damages for the wrong done him in depriving him of his natural right to dispose of his labor to the best advantage. But the single circumstance that a person, by reason of his illegal suspension from union membership, is unable to secure work, while no

doubt resulting in damage to him, does not of itself create a cause of action against the union if he has failed to exhaust his remedy within the organization as required by its laws. On joining the union he agreed to become bound by its rules and as an incident of that membership, he consented to be suspended or expelled in accordance with those rules." Labor Unions by Dangel and Shriber (1941).

"Workers who in concert procure the dismissal from employment of an employee because he has been expelled or suspended from a labor union are liable to him for the harm caused thereby, if, but only if, **the suspension or expulsion was wrongful and the employee has exhausted the remedies available within the union.**" Restatement of the Law, Torts, Section 812, Page 169.

While recognizing the cause of action for inducing third persons not to deal with another, as pointed out in 219 Ill. 159, American Jurisprudence continues:

"It has been said, however, that one who purposely causes a third person not to enter into or continue a business relation with another in order to influence the other's policy in the conduct of his business is **privileged,** if (1) the actor has an economic interest in the matter with reference to which he wishes to influence the policy of the other, (2) the desired policy does not illegally restrain competition or otherwise violate a defined public policy, and (3) the means employed are not improper." 30 Amer. Jur., Section 46, page 95.

Also see **26 O. Jur. 605; 24 O. Jur. 635; Local 248 v. Solt, 8 Oh Ap 437.**

In the instant case it is obvious that the local Musician's Union has an economic interest in the matter of bookings of its members for performances, that the policy of regulating those who act as agents and book contracts with its members does not illegally restrain competition or otherwise violate public policy and that the means used of publishing a suspension notice in its house organ, are not unlawful or improper. It is clear on the face of the pleadings that there is no allegation relating to the existence of any violence, threats, intimidations, coercion or the like which are described only in plaintiff's brief.

The plaintiff is not alleged to have been a member of the union and therefore he was not subject to discipline as a member; however, he was either licensed or otherwise formally recognized by the union as an official booking agent or sub-agent, a relationship of some nature which was admittedly terminated by the local union. Having obtained a benefit by such recognition and relationship, the plaintiff was to this extent subject to the discipline necessary and appropriate to its continuance or termination. The performance of his work for the membership was contingent upon the approval of the organized body which he served. The licensing of agents or sub-agents is a privilege extended by organized musicians for the benefit of its members. Such action is lawful and appropriate to the purpose of the union. It follows that regulations and controls, including termination of the relationship, is equally within the purpose and right of the organization.

Where a member of a union is expelled he has no cause of action unless he alleges and establishes that the action of the union was un-

296

lawful or violated the rights of the member under the constitution or by-laws of the association. **Pfah v. Whitney, 43 Abs (App) 147.**

Similarly, a party who is not a member but who has been licensed or approved as agent by the union has no cause of action against the union unless such party alleges that the action of the union was a violation of contract, if any, or was factually unlawful, or violated his rights under the constitution or rules of the organization whereby such rights were conferred upon him.

The authorities cited support the conclusion that the plaintiff cannot recover on these pleadings. Seymour Ruff & Sons v. Bricklayers Union, 163 Md 687, 164 A 752; Rhodes Bros. Co. v. Musicians Protective Union, 37 R. I. 281, 92 A 641; Porter v. King County Medical Society, 186 Wash. 410, 58 Pac. 2d 367; Edelstein v. Gillmore, 35 F. 2d 723.

An act in itself lawful or proper is not converted into an unlawful act merely by a general allegation in the petition which characterizes a lawful act as unlawful or malicious, and in such a situation pure characterization, even though improper or not objected to, does not give birth to a cause of action. **Kisler v. Local, 165, 26 Oh Ap 284.** In other words the only facts admitted are those facts well pleaded. The same rule of pleading may be applied on a motion for judgment on the pleadings. A bare characterization of unlawfulness is merely a legal conclusion and a wish of the pleader. Such a legal conclusion, unsubstantiated by facts which could give it life, has no standing in any court where issues must be presented and determined by facts in ordinary and concise language.

Motion of the defendant, Dayton Musicians' Association, Local 101, for judgment in its favor on the pleadings is sustained.