370 So.2d 389 (1979)
Ronald D. NITZBERG, Appellant,
v.
Allan L. ZALESKY, and First Mortgage Investors, a Massachusetts Investment Trust, Appellees.
No. 78-1701.
District Court of Appeal of Florida, Third District.
April 3, 1979.
Rehearing Denied May 23, 1979.
*390 Vogler & Postman, Miami, for appellant.
Rollins, Peeples & Meadows and Barbara L. Suhar, South Miami, Rollnick, Squitero & Katz, Michael D. Katz, Miami, for appellees.
Before HENDRY, BARKDULL and HUBBART, JJ.
BARKDULL, Judge.
This is an appeal by the plaintiff in the trial court from adverse summary judgments in favor of two defendants in causes of action sounding in tortious interference with a contractual relationship.[1]
Ronald D. Nitzberg (hereinafter referred to as Nitzberg) filed a complaint against First Mortgage Investors (hereinafter called FMI) and Allan L. Zalesky (hereinafter referred to as Zalesky) inter alia, alleging tortious interference by them with contractual relations between Nitzberg and Caribbean International Corporation (hereinafter referred to as CIC). After the taking of depositions, both plaintiff and defendants (FMI and Zalesky) moved for summary judgments which were entered in favor of defendants. This appeal ensued.
FMI made a loan to CIC and its affiliate corporations, secured by first mortgage liens on four resort hotels and security interests in certain vacation license agreements. Subsequently, Nitzberg entered into an employment agreement with CIC. The agreement provided for a salary, various bonuses, and stock options and was to continue for a period of five years. The employment agreement was signed by appellee Zalesky in his capacity as President of CIC; Zalesky was also a major stockholder of CIC. The relevant actions of Zalesky were made in a corporate capacity and not as an individual.
During the year 1973, CIC was in very poor financial condition and, in October 1973, FMI refused to advance additional funds unless CIC improved its financial condition. At this point, CIC was in debt in the amount of approximately $1,000,000.00. FMI required CIC to cut back on overhead. In response to this demand from FMI to tighten up on finances, all officers of CIC took salary cuts. Nitzberg's salary was reduced from $75,000.00 per year to $50,000.00 per year. Nitzberg was not singled out for salary reduction; Zalesky and other officers also took a cut in salary. Nitzberg accepted the reduction as a pay deferment until things at the company "turned around". The activities did not turn around, and the entire corporation was sold. Nitzberg demanded full payment of his salary, and Zalesky replied that the company did not have the money to pay him. Nitzberg left the employ of CIC, and filed his action in the trial court. The complaint consisted of four counts: Count I sought damages for breach of an employment contract; Count II sounded in quantum meruit, seeking to recover for services rendered to certain subsidiaries and/or affiliates of CIC; and Counts III and IV sought damages for tortious interference with a contractual relationship.
This court has most recently stated the elements of action of tortious interference with the business relationship in the case of International Funding Corporation v. Krasner, 360 So.2d 1156 (Fla. 3d DCA 1978), as follows:
.....
"The elements of the tort of interference with a business relationship are (1) existence of a business relationship under which the claimant has legal rights, (2) intentional and unjustified interference with that relationship by defendant, and (3) damage to the claimant as a result of *391 the breach of the business relationship... ."
.....
360 So.2d 1157. Recent cases which support this include Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769 (Fla. 4th DCA 1978); Sutton v. Stewart, 358 So.2d 119 (Fla. 1st DCA 1978); Serafino v. Palm Terrace Apartments, Inc., 343 So.2d 851 (Fla. 2d DCA 1976); Smith v. Ocean State Bank, 335 So.2d 641 (Fla. 1st DCA 1976).
The facts presented in the pleadings established a business relationship between Nitzberg and CIC; the first element. To establish the second element, there must have been an intentional and unjustified interference with the business relationship between Nitzberg and CIC by Zalesky and FMI. There is no question but that the activities of Zalesky and FMI were intentional; however, the appellant has failed to establish any indication of an unjustified interference with the business relationship. Since there was no unjustified interference, the third element of a test for tortious interference (damage) is not reached in this case.
The requirement of FMI that CIC reduce its overhead before additional operational funds were lent was reasonable and justified. Zalesky's activities, carried out in order to save the corporation, are privileged under Florida law. The law recognizes that a contracting party has a privilege to interfere with a contractual or business relationship, where the interference is necessary to protect his own contractual rights provided that such interference is without malice. See: Serafino v. Palm Terrace Apartments, Inc., supra, wherein the Second District Court of Appeal cites, with approval the case of Petty v. Dayton Musicians Association, 153 N.E.2d 218 (Ohio Com.Pl. 1958), where it was held that:
"... one who purposely causes a third person not to enter into or continue a business relationship with another in order to influence the other's policy in the conduct of his business is privileged, if (1) the actor has an economic interest in the matter with reference to which he wishes to influence the policy of the other, (2) the desired policy does not illegally restrain competition or otherwise violate a defined public policy, and (3) the means employed are not improper." (emphasis supplied)
If a person has a present existing economic interest to protect, such as ownership interest or a prior contract right of his own, he is privileged to prevent performance of a contract of another which threatens it. Babson Bros. Co. v. Allison, 337 So.2d 848 (Fla. 1st DCA 1976). In the cited case, the court said:
"[3] This case must be reversed for another reason. The Illinois corporation correctly contends that it was privileged to interfere with the contract between Allison and the Georgia corporation. The most recent draft of the Restatement of the Law of Torts states as follows:
"`769 Privilege of One Having Financial Interest in Business of Person Induced.
One who has a financial interest in the business of another is privileged purposely to cause him not to perform a contract with a third person, or not to enter into or continue a contractual relation with him, in the course of that business, if the actor (a) does not employ improper means, and (b) acts to protect his interest from being prejudiced by the contract or relation.' Restatement (2d) of Torts § 769 (Tent.Draft No. 14 approved by the Institute 5/21/69).
"The financial interest which one must have to come within the privilege varies. In this regard, we find the following statement in Prosser, Law of Tort § 129, pages 944-45 (4th Ed. 1971):
"`Financial interest. The financial interest in another's business requisite for the privilege stated in this Section is an interest in the nature of an investment. A part owner of the business, as for example, a partner or stockholder, has at least such an interest.' Comment a, Restatement of Torts § 769 (1939).

*392 "`Where the defendant acts to further his own advantage, other distinctions have been made. If he has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it... .'
"It is clear that a controlling stockholder of a corporation falls within the privilege when he interferes with a contract between the corporation and a third person. See Covert v. Terri Aviation, Inc., 197 So.2d 12 (Fla. 3 DCA 1967), and Felsen v. Sol Cafe Mfg. Corp., 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969)... ."
Although the Florida courts have not decided whether interest of a mortgage lender is that of a "financial interest" within the scope of the established privilege, such a conclusion follows from the decisions in Serafino and Babson, supra.
The record is devoid of any facts supportive of the contention that the actions of FMI in requiring its financially troubled borrower, CIC, to reduce its overhead expenses as a condition to additional funding from FMI amounted to an intentional and unjustified interference with appellant's employment agreement with CIC simply because CIC required its officers to take salary cuts. It affirmatively appears from the record that the actions of FMI and Zalesky fall clearly within the privilege recognized under Florida law by the Babson and Serafino, supra, decisions and further reflected in the Restatement of Torts, since FMI was acting to protect its clear financial interest as a mortgage lender.
Applying the law to the facts in this situation, it is clear that the trial court was correct in granting summary judgments in favor of Zalesky and FMI.
Therefore, the summary judgments here under review be and the same are affirmed.
Affirmed.
NOTES
[1] The case remains pending in the trial court against other defendants on other causes of action.