John J. ADKINS, et al., Plaintiffs,

v.

GENERAL MOTORS CORPORATION, et al., Defendants.

No. C–3–82–011.

United States District Court, S.D. Ohio, W.D.

Jan. 6, 1983.

Irving I. Saul and Dwight D. Brannon, Dayton, Ohio, for plaintiffs.

Joseph P. Buchanan, Dayton, Ohio, for defendant General Motors Corp.

Richard F. Rice, Kettering, Ohio, Carole W. Wilson, Washington, D.C., for defendants IUE–AFL–CIO and IUE–AFL–CIO Local Union 801.

J.R. Wheatley, Detroit, Mich., for defendant General Motors Corp.

DECISION AND ENTRY ON PENDING MOTIONS TO DISMISS; SAID MOTIONS TREATED AS ONE MOTION, SUSTAINED IN PART AND OVERRULED IN PART; ENTRY OF CONTINUANCE; NEW TRIAL DATE AND OTHER DATES SET; EXTENSION OF TIME GRANTED FOR FILING OF MOTIONS FOR SUMMARY JUDGMENT; ORAL HEARING SET ON MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFFS' COUNSEL GIVEN LEAVE OF COURT TO FILE MOTION TO AMEND COMPLAINT TO ADD ADDITIONAL PARTIES PLAINTIFFS; DIRECTIONS TO COUNSEL; CONFERENCE CALL SET

RICE, District Judge.

In this matter, Plaintiffs have filed an original and amended complaint, alleging that Defendants have violated a variety of federal labor statutes and state common law duties. One of the Defendants, General Motors Corp. (GMC), has filed motions to dismiss said complaints (docs. # # 6 & 14). For convenience, said motions will be considered as *one* motion, to dismiss the amended complaint. Based on the reasoning set out below, said motion is sustained in part and overruled in part.

I. ALLEGATIONS IN THE COMPLAINTS

The original and amended complaints, taken together, amount to almost 100 pages of text. Named as Plaintiffs are 342 employees and former employees of the Delco Air Conditioning Division of GMC (numbered 1 through 342 in the original complaint), and a number of their respective spouses (numbered 343 through 600 in said complaint). Named as Defendants are GMC, the International Union of Electrical, Radio and Machine Workers, AFL–CIO (IUE), and its Local 801.

Plaintiffs allege that the IUE and Local 801 violated their duty of fair representation under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and under § 101(a)(1) of the Labor Manage-

ment Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1), with respect to their negotiation, adoption and implementation of certain collective bargaining agreements. Plaintiffs also allege that GMC breached said collective bargaining agreements in certain stated particulars.

Detailed descriptions of the parties, and of the aforementioned breaches, take up over 20 pages in the original complaint. The primary allegations may be, very briefly, summarized as follows. Some Plaintiffs were members of the so-called "red-circled 5500." Pursuant to a "Bridge Agreement" between Frigidaire and Local 801, dated December 10, 1976, that group had the right to transfer to the Delco division. Plaintiffs herein were part of a group of approximately 2000 who elected to transfer to Delco. That transfer, Plaintiffs contend, was made with the "implied understanding" that they would be treated equally, vis-a-vis other members of the "red-circled 5500," in accordance with their accumulated Frigidaire seniority, which seniority would be preserved in their post-Frigidaire tenure. However, two new collective bargaining agreements, entered into in February and September of 1979, substantially modified the "Bridge" agreement. These agreements provided for the transfer of Frigidaire employees to the newly operational Moraine truck plants, and for the recall of laid-off Frigidaire—but not Delco—employees. Through these acts, Plaintiffs allege, IUE and Local 801 breached their duty of fair representation by irrational, arbitrary and discriminatory conduct. Moreover, they further contend, said acts constituted a breach of the implied obligations in the Bridge Agreement. Finally, they allege, the manner in which the IUE and Local 801 conducted ratification votes on the 1979 agreements was arbitrary, discriminatory, and also violated the LMRDA. Plaintiffs prayed for extensive monetary and equitable relief.

In their amended complaint, Plaintiffs first reiterate all the allegations in the original complaint, and redesignate same as Count One. Invoking this Court's pendent jurisdiction, Plaintiffs set out a number of state law claims under Count Two. After incorporating by reference the allegations in Count One, Plaintiffs allege in pertinent part, that said acts

> constitute on the part of IUE, 801 and GM ... the tortious interference with, invasion of and conspiracy against ...
>
> (b) pertinent labor agreements that otherwise would have subsisted for the benefit of said plaintiffs numbered 1 through 342;

Amended Complaint, ¶ 72. Plaintiffs also allege that they have suffered, as a result of "violations of their common law rights ... appreciable emotional distress, anxiety and mental anguish." ¶ 74. Moreover, due to the violations just mentioned, these Plaintiffs who are spouses allege that they have "sustained a loss of services, society and companionship with respect to each such spouse's husband or wife." ¶ 75. Appropriate monetary and equitable relief is requested for the common law claims, as well.

## II. GMC'S MOTION TO DISMISS IS SUSTAINED IN PART AND OVERRULED IN PART

As noted above, the Court will treat, for convenience, GMC's pending motions to dismiss as *one* motion to dismiss both counts of the complaint, as amended. In a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint, and only sustain the motion if it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). With this standard in mind, the Court turns to the allegations set forth in Counts One and Two.

## A. COUNT ONE ALLEGATIONS

Defendant GMC advances several reasons why the allegations of federal labor law violations should be dismissed. First, GMC contends that the allegations of arbitrary and discriminatory conduct are made in an inadequate and conclusory manner. More-

over, GMC asserts, Plaintiffs essentially seek to rely on seniority rights from the Bridge Agreement, which rights were simply eliminated when said agreement was extinguished and superseded by the 1979 agreements. Finally, GMC argues that marital status does not create a cause of action under § 301 of the LMRA, and that the Plaintiffs who are spouses should not be entitled to sue thereunder.

■ GMC's first two arguments are not well taken. As Plaintiffs clearly recognize in their complaint, a union's breach of the duty of fair representation can be predicated on action, or inaction, toward any union member which is arbitrary, discriminatory, or in bad faith, and which amounts to something more than mere negligence. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1103 (6th Cir.1981). It is also true, as Defendant insists, that Plaintiffs must allege more than conclusory statements of arbitrary and discriminating conduct. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976); *Balowski v. UAW*, 372 F.2d 829, 835 (6th Cir.1967). However, there is no question that Plaintiffs' allegations go beyond mere conclusory statements. In their lengthy and detailed allegations, Plaintiffs present facts which, if true, would arguably demonstrate arbitrary, discriminatory, and bad faith conduct on the part of Defendants.

Similarly, it appears clear that Plaintiffs' liability claim is *not* "grounded on the theory that their seniority extends beyond the term of the Local [Bridge] Agreement dated December 10, 1976." GMC's motion to dismiss, doc. # 6, p. 4. Instead, as Plaintiffs explain in their memorandum contra, doc. # 20, pp. 1–2, the § 301 claim against GMC is predicated on GMC having acted, in concert with the unions, to modify their seniority rights in an arbitrary and discriminatory manner. Also, as Plaintiffs assert, GMC begs the question when it states that the Bridge Agreement has ended, since the replacement agreements should be rendered void by Defendants' wrongdoing. Again, these allegations, if true, could support a finding that GMC breached one or more of the various collective bargaining agreements set forth in the allegations. *See also, Parker v. Teamsters Local 413*, 501 F.Supp. 440, 449–50 (S.D.Ohio 1980), *aff'd without opinion*, 657 F.2d 269 (6th Cir.1981).

■ The Court does find, however, that GMC's last argument is well taken. Plaintiffs numbered 343 through 600 are described in Count One as "spouses" of earlier named employee-plaintiffs, Original Complaint, ¶ 10. Their injury is alleged to be the "loss of services, society, and companionship" of the spouse, as a "direct result" of the mental distress suffered by the employee-spouse. ¶ 62. No formal relationship between the spouses and any one of the Defendants is alleged. Without citing authority, GMC argues that "[t]here are absolutely no factual allegations that support the conclusion that said spouses have rights under [§ 301]. Surely marital status does not create a cause of action based on breach of the collective bargaining agreement." GMC's motion to dismiss, doc. # 6, p. 2. Plaintiffs did not reply to this issue in their memorandum contra.

To resolve this question, the Court must decide which parties can bring suit under § 301. The statute is not particularly helpful, since it speaks in the passive voice ("suits . . . may be brought"), and does not identify who can bring suit. However, "courts have generally held that [§ 301] creates federal jurisdiction only over parties to the contract being sued upon." *Metropolitan Detroit Bricklayers v. J.E. Hoetger & Co.*, 672 F.2d 580, 583 (6th Cir.1982). In addition, as this Court recently stated:

> it is settled in this Circuit that a section 301 suit may be properly maintained by persons other than the parties to the labor agreement, including individuals who are not employees of the employer-party, provided that the individuals who sue have a personal and beneficial interest in the enforcement of such agreement, and said interest is injured by a breach thereof. *Hill v. Iron Workers Local Union 25*,

520 F.2d 40 (6th Cir.1975); *Hazen v. Western Union Telegraph Company,* 518 F.2d 766 (6th Cir.1975). *Williams v. AMF, Inc.,* 512 F.Supp. 1048, 1055 (S.D. Ohio 1981).

In *Williams,* plaintiffs were former employees of a company, and it is also settled that current or former employees—who are typically not formal signatories to a collective-bargaining agreement—can bring suit to enforce the agreement in a § 301 action. *See Santos v. District Council of New York City,* 547 F.2d 197, 200 n. 3 (2d Cir.1977) (collecting cases). The Sixth Circuit in *Hill* permitted suit by an applicant for employment, and in *Hazen,* by a widow of an employee, for severance pay and other benefits due the employee under the collective bargaining agreement, based on a third party beneficiary theory.

The spousal Plaintiffs herein cannot claim the benefit of any such third party beneficiary theory. They do not fall under the categories of individuals that have been permitted to sue, by prior case law, as third party beneficiaries. They are not alleged to be future or ex-employees, do not purport to sue in the place of employees, and are not alleged to be claiming benefits specifically due them (or their husbands) under the various collective bargaining agreements. *See, Gannon v. Baldt Anchor and Chain,* 459 F.Supp. 457, 459 (E.D.Pa.1978). For these same reasons, the spousal Plaintiffs cannot be considered as third party beneficiaries, under general contract theory. *See* 4 *Corbin on Contracts* chs. 41–45 (1951 & 1982 supp.); J. Calamari & J. Perillo, *Contracts,* ch. 14 (1970). Thus, the spousal Plaintiffs have no standing to sue for damages under § 301. Nor would said Plaintiffs have standing under § 101(a)(1) of the LMRDA, which grants a number of rights to "members" of labor organizations.

Accordingly, based on the aforesaid, the federal statutory claims of Plaintiffs numbered 1 through 342 are not dismissed. The motion to dismiss with regard to these Plaintiffs on this Count is overruled. The federal claims of Plaintiffs numbered 343 through 600 are dismissed. The motion to dismiss with regard to these Plaintiffs on this Count is, therefore, sustained to this extent.

## B. COUNT TWO ALLEGATIONS

Plaintiffs' allegations in Count Two, outlined above, are not entirely clear. Liberally construing same, as the Court must in a motion to dismiss, it appears that Plaintiffs are asserting the following claims, under Ohio law, with respect to the moving Defendant: tortious interference with contract, breach of contract, infliction of mental anguish, and loss of consortium.

As it did with Count One, GMC advances several reasons in arguing that Count Two should be dismissed. First, any state law torts would be preempted by federal labor law, and cannot be asserted as independent claims in this action. Moreover, the loss of consortium claim is a "derivative right," and cannot be maintained if the husband plaintiffs cannot maintain a "state law cause of action." In any event, GMC concludes, under Ohio law no loss of consortium can be predicated on a breach of contract, since only "physical interference" can serve as the basis for such a claim.

Thus, GMC raises two lines of defenses for each state law claim alleged by Plaintiffs: the claim is preempted by federal labor statutes, and, in any event, does not state a cause of action under relevant Ohio law. The Court will consider both of these defenses to each of the four state law claims.

Initially, the Court notes, as do the parties, that the preemption inquiry as whether an activity is arguably protected by § 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, or arguably prohibited by § 8 of the NLRA, 29 U.S.C. § 158. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982); *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 187–88, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978); *Farmer v. United Brotherhood of Carpenters & Joiners,* 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977); *Harnischfeger Corp. v. Sheet Metal Workers Union,* 436 F.2d 351, 356

(6th Cir.1970). If that inquiry is answered in the affirmative, a federal or state court must defer the matter to the National Labor Relations Board (NLRB), to avoid any conflict between federal statutes and state law. This rule, however, is not applied if the activity, which would otherwise be protected or prohibited by the NLRA, "was merely a peripheral concern" of the NLRA, or "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," courts could not infer that Congress intended to deprive "the States of the power to act." *Farmer, supra,* 430 U.S. at 296–97, 97 S.Ct. at 1061. In addition to the judicially created exceptions to the preemption doctrine, Congress itself has created exceptions to the NLRB's exclusive jurisdiction. Perhaps the most notable of these latter exceptions is § 301 of the LMRA, which "authorizes suits for breach of a collective-bargaining agreement even if the breach is an unfair labor practice with the Board's jurisdiction." *Farmer, supra,* 430 U.S. at 297 n. 8, 97 S.Ct. at 1062 n. 8; *Sears, Roebuck & Co., supra,* 436 U.S. at 189 n. 14, 98 S.Ct. at 1753 n. 14.

■ The Court need not decide if the "tortious inference with contract" claim would be preempted by federal law, for it is clear that same is not well-pleaded under Ohio law. As recently stated by the Sixth Circuit, said tort, under Ohio law, is based on the principal that "one who, without a privilege to do so, induces or otherwise purposely *causes a third party* not to .enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby." *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1127 (6th Cir.1981) (emphasis added), *reh. denied,* 668 F.2d 878 (6th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). *See also Battista v. Lebanon Trotting Ass'n,* 538 F.2d 111, 116 (6th Cir.1976). In the Count Two allegations, Plaintiffs do not clarify which contract(s), or "labor agreements", were subject to tortious interference. More importantly, they wholly fail to identify the "third party" which GMC induced not to

enter into a contract. Plaintiffs are, perhaps, referring to interference with Plaintiffs' relationship with the IUE and Local 801. Some authorities have characterized a union constitution or charter as a contract between the union and its members, *see, e.g., Winter v. Teamsters Local No. 639,* 569 F.2d 146, 150 (D.C.Cir.1977); 39 O.Jur.3d *Employment Relations,* § 414 (1982), which can be enforced by a union member. *Cf. Petty v. Dayton Musicians' Assoc.,* 79 Ohio L.Abs. 292, 153 N.E.2d 218 (Montgomery Cty.Ct. Common Pleas), *aff'd per curiam,* 81 Ohio L.Abs. 203, 153 N.E.2d 223 (Montgomery Cty.Ct.App.1958). It would not necessarily follow, however, that GMC "caused" Local 801 not to "contract" with the union members, under the facts alleged in the complaint. The complaint simply does not indicate how GMC's actions would or could violate the terms of the "contract" between Local 801 and Plaintiffs who are (or were) members of the Local. In short, while some "tortious interference with contract" claims are perhaps not wholly impossible in the within case, same are not adequately articulated in Count Two. Accordingly, said claim is dismissed with respect to GMC.

■ The second claim derived by this Court from Count Two—breach of contract or of the "labor agreement"—must also be dismissed. As noted above, a breach of labor contract claim is an exception to the preemption doctrine, given § 301 of the LRMA. This exception, of course, allows Plaintiffs' breach of labor contract claim under § 301 to go forward in this Court, rather than being preempted by the NLRB. A related question, however, is whether or not this exception also covers a pendent *state law* claim for breach of contract (the gravamen of the second claim under Count Two herein). Unfortunately, the Court has been unable to locate published authority which expressly addresses or answers this question. Nevertheless, extrapolating from existing authority compels the conclusion that such a pendent claim *is* preempted.

■ It is settled that state courts can entertain § 301 actions. *Dowd Box Co. v.*

*Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). It is also clear that in such actions, state courts must apply a common body of *federal* labor law in interpreting collective bargaining agreements. *Teamsters Local 173 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). *See, e.g., Holbrook v. Dana Corp.,* 70 Ohio App.2d 255, 436 N.E.2d 1371 (Lucas Cty. 1980). State courts can construe a breach of labor contract action as arising under § 301, *e.g., Holbrook v. Dana Corp., supra,* and such actions can be removed (on that basis) to federal courts. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209 (9th Cir.1980) (per curiam); *Avco Corp. v. Aero Lodge No. 735,* 376 F.2d 337 (6th Cir.1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

Under such reasoning, Plaintiffs' pendent state law claim for breach of a labor contract would, in effect, merge with the § 301 action. *Both* actions would be governed by the *same* body of substantive federal law. *Lucas Flour Co., supra.* The claims would be, for all practical purposes, identical. Accordingly, it seems clear that the § 301 exception to the preemption doctrine covers just that: a § 301 suit brought in federal *or* state court. The exception does not cover a pendent state law for breach of a labor contract which, in any event, must be construed as a § 301 action. Thus, the motion to dismiss is sustained with respect to the pendent breach of contract claim.

■ The third claim under Count Two—infliction of mental distress—must also be dismissed. First, the Court finds no preemption difficulty, since alleged infliction of mental distress is simply not arguably protected or prohibited by the NLRA. Second, under Ohio law, damages for intentional infliction of mental distress are recoverable if contemporary physical injury was inflicted *or* there was malice on the part of the wrongdoer. *Umbaugh Pole Building Co., Inc. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320 (1979); *Columbus Finance, Inc. v. Howard,* 42 Ohio St.2d 178, 327 N.E.2d 654 (1975). At various points in the complaint, Plaintiffs allege that the Defendant unions acted in a "deceitful" way (*e.g.,* Original Complaint, ¶¶ 40–42, 50). However, Plaintiffs nowhere *specifically* allege that GMC acted maliciously or that contemporary physical injury occurred to the Plaintiffs. Accordingly, the allegations with respect to infliction of mental distress are inadequately pleaded, under Ohio law, as to GMC. Said cause of action is thus dismissed as to GMC.

■ Finally, the spousal Plaintiffs in Count Two allege that they have "sustained a loss of services, society and companionship . . . ." The Court construes these allegations to be a typical loss of consortium claim under Ohio law. *See Clouston v. Rembinger Oldsmobile Cadillac, Inc.,* 22 Ohio St.2d 65, 258 N.E.2d 230 (1970). Initially, the Court again finds no preemption difficulty, since the tort of causing a loss of consortium is not arguably protected or prohibited by the NLRA. Under Ohio law, the Court finds that the spousal Plaintiffs have stated a viable, if unusual, cause of action. As Plaintiffs correctly observe, under Ohio law, outlined in *Clouston, supra,* it is simply not the case, as GMC contends, that a spouse's loss of consortium is somehow "derivative" of the husband's claim. Under *Clouston,* a spouse will have a separate and independent cause of action for loss of consortium. GMC's other argument, that loss of consortium can only be predicated on some sort of "physical interference" (not alleged herein), carries more force. Certainly, the *Clouston* decision, and other reported Ohio case law on the subject, speak in terms of an "injury" or "*physical* injury" to a spouse. However, the cases do not *require* that the injury to a spouse be physical. Moreover, the Ohio Supreme Court has broadly defined consortium as "society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." *Clouston, supra,* 258 N.E.2d at 230, syl. 3. It is perhaps difficult, but not impossible, to prove that the "injury" of mental distress can lead to a loss of consortium. Accordingly, the Court finds that the spousal Plaintiffs' loss of consortium claims may go forward, and, therefore, same will not be dismissed.

## III. CONCLUSION

In summary, the Court sustains in part, and overrules in part, the pending motions to dismiss. The allegations in Count One by the spousal Plaintiffs are dismissed; the motion with respect to Count One is overruled in all other respects. Under the Count Two allegations with respect to movant GMC, the Court delineated four possible causes of action, and disposed of same as follows:

(1) tortious interference with contract: dismissed in its entirety;

(2) breach of contract: dismissed in its entirety;

(3) infliction of mental distress: dismissed in its entirety (with respect to GMC); and

(4) loss of consortium: not dismissed.

For good cause shown and at the specific request of Defendants' counsel (a GM–IUE conference being set at a time which might conflict with date previously set for trial upon the merits and a desire to have this Court fully consider and rule on motions for summary judgment to be filed), trial on the merits of the captioned cause, heretofore set for the week of February 14, 1983, is hereby ordered reset for the week of April 25, 1983. Said trial will be before a duly impaneled jury.

The jointly prepared Final Pretrial Order, in the form suggested by the enclosed materials, is to be filed by 4:30 p.m. on Monday, April 11, 1983.

The date of the Final Pretrial Conference is Tuesday, April 12, 1983, at 4:30 p.m. Local counsel should be present in chambers, and counsel from Washington and Detroit will be reached by telephone conference call at the appointed time.

At a further preliminary pretrial conference on Tuesday, November 30, 1982, the following procedures were agreed upon by and between counsel:

1. The Court shared with counsel, in oral fashion, the rulings which have been journalized herein. Counsel for the Defendant Unions asked leave of Court to join the motions to dismiss previously filed by the Defendant General Motors Corporation. This Court granted said request and, from this point forward, the Defendant Unions are deemed to have moved, in similar fashion as has the Defendant General Motors Corporation in the motions which formed the basis of this opinion. Not later than the close of business on Tuesday, December 14, 1982, Plaintiffs' counsel were, if they wished, to have filed a memorandum setting forth whether they feel there are any bases to oppose said motions, deemed filed on behalf of the Defendant Unions, which have not already been set forth in memoranda contra the motions filed by the Defendant General Motors Corporation. Should such an affirmative memorandum be filed by Plaintiffs, the Defendant Unions are given until the close of business on Friday, January 7, 1983, within which to file any reply memorandum deemed necessary. Failure of the Plaintiffs to file such a memorandum by the close of business on Tuesday, December 14, 1982, will result in this Court's making similar disposition of the motions deemed filed by the Defendant Unions as was made herein.

2. Not later than the close of business on Tuesday, December 14, 1982, Plaintiffs' counsel will file a motion seeking leave of Court to file an amended complaint adding some 140 new employees and their spouses. Said motion should be accompanied by a proposed amended complaint. Leave of Court is sought to amend the complaint and to add the additional plaintiffs in lieu of filing a separate lawsuit and then seeking joinder of said with captioned cause. The Defendants will take until the close of business on Friday, January 7, 1983, within which to file any contra memoranda. Should this Court deny the requested leave to amend, Plaintiffs' counsel retain the right to file a separate lawsuit with the 140 odd employees and their spouses as party plaintiffs.

3. Not later than the close of business on Monday, January 17, 1983, all counsel will file motions for summary judgment with accompanying memoranda. Said motions will be briefed according to the time-

table set forth by the Local Rule of Court 4.0.2, to wit: "any memoranda contra a motion shall be filed within twenty (20) days from the date of service as set forth on the certificate of service attached to the served copy of a motion. Failure to file a memorandum contra may be cause for the Court to grant the motion as filed. A reply memorandum may be filed within seven (7) days after the date of service shown on the certificate of service attached to the served copy of the memorandum contra. These periods may be extended as provided by Rule 3.5. No additional memoranda beyond those enumerated above will be permitted, except upon leave of Court for good cause shown."

Oral hearing will be had, in person, in Courtroom #1, Ninth Floor, 200 West Second Street, Dayton, Ohio, on Thursday, February 17, 1983, at 1:00 p.m.

4. The parties warrant that discovery is going smoothly. The Plaintiffs warrant that they have deposed the principal Union and General Motors personnel, with little in the way of further depositions contemplated. A request for production of documents defined in the course of the depositions is contemplated. The Defendant General Motors Corporation conducted no discovery reference interrogatories or requests for production of documents and feels that, should said discovery devices be necessary, same can be done within the discovery deadlines previously fixed by this Court. The Unions may serve interrogatories but see no problem in completing discovery.

5. The previous discovery cut off date of January 17, 1983, can be met by the parties.