John J. ADKINS, et al., Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,**
et al., Defendants.

No. C–3–83–1088.

United States District Court,
S.D. Ohio, W.D.

Aug. 16, 1988.

Irving I. Saul, Dwight D. Brannon, Dayton, Ohio, for plaintiff.

Joseph P. Buchanan, Dayton, Ohio, Elmer W. Johnson, J.R. Wheatley, Gen. Counsel, General Motors Corp., Detroit, Mich., for defendant General Motors Corp.

Richard F. Rice, Kettering, Ohio, Carole W. Wilson, Washington, D.C., for defendant IUE and Local 801.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART THE MOTIONS OF DEFENDANT UNIONS (DOC. # 21) AND DEFENDANT GENERAL MOTORS CORP. [DOC. # 22) FOR RECONSIDERATION, AND, ACCORDINGLY,

VACATING IN PART THE COURT'S DECISION AND ENTRY SUSTAINING IN PART, AND OVERRULING IN PART, PLAINTIFFS' MOTION TO REMAND (DOC. # 9); DECISION AND ENTRY VACATING IN PART THE COURT'S DECISION AND ENTRY SUSTAINING THE MOTION OF DEFENDANT UNIONS FOR SUMMARY JUDGMENT (DOC. # 19); DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR COSTS (DOC. # 11) IN ITS ENTIRETY; FURTHER PROCEDURES ORDERED OF THE DEFENDANTS

RICE, District Judge.

This case is before the Court on the Motions of the Defendants (Doc. # 21; Doc. # 22) for Reconsideration of the Court's Decision and Entry sustaining in part, and overruling in part, the Motion to Remand (Doc. # 9) and on the Motion of the Plaintiffs for Costs (Doc. # 11). For the reasons briefly set forth below, the Defendants' Motions for Reconsideration are sustained in part and overruled in part; the Court's Decision and Entry sustaining in part, and overruling in part, Plaintiffs' Motion to Remand (Doc. # 9) is, accordingly, vacated in part; the Court's Decision and Entry sustaining the Motion of Defendant Unions for Summary Judgment (Doc. # 19) is vacated in part; and the Motion of Plaintiffs for Costs (Doc. # 11) is overruled in its entirety.

## I. A PROCEDURAL BACKGROUND

An understanding of the procedural posture of this case requires a brief summary of litigation previously brought before this Court. In January, 1982, many of the Plaintiffs in the instant case filed suit in this Court against the same Defendants, namely, Defendant General Motors Corp. (GMC), Defendant International Union of Electrical, Radio and Machine Workers, AFL–CIO (IUE), and Defendant Local 801. *Adkins v. General Motors Corp.,* No. C–3–82–011 (S.D. Ohio Jan. 18, 1982). The Amended Complaints therein contained two counts.[1] Plaintiffs' advanced federal

---

**1.** "[A] court may take judicial notice of its own record of another case between the same par-

ties." *Harrington v. Vandalia–Butler Bd. of Educ.,* 649 F.2d 434, 441 (6th Cir.1981).

claims in the first count, alleging that the IUE and Local 801 violated their duty of fair representation, and that GMC breached a contract, with respect to the negotiation, adoption, and implementation of certain collective bargaining agreements. Count One thus presented a "hybrid" action under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and a claim under § 101(a)(1) of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1). Invoking the Court's pendent jurisdiction, Plaintiffs also set out four state claims in Count Two of the Complaints: tortious interference with contract; breach of contract; infliction of mental anguish; and loss of consortium.

GMC moved to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), alleging that it failed to state a claim upon which relief could be granted. This Court sustained in part, and overruled in part, the Motion to Dismiss. *Adkins v. General Motors Corp.*, 556 F.Supp. 452 (S.D. Ohio 1983) (*Adkins I*). With respect to the federal claims, this Court held that same were sufficiently pleaded to survive a motion to dismiss, *except* that the spousal Plaintiffs had no standing to proceed. *Id.* at 456. With respect to the state claims, the Court considered two lines of defense raised by GMC: that the claims were preempted by federal labor statutes and, in any event, did not state a cause of action under Ohio law. *Id.* The Court held as follows: (1) the tortious interference with contract claim did not state a cause of action under Ohio law; (2) the breach of contract claim was preempted by LMRA § 301; (3) the infliction of mental distress claim did not state a cause of action under Ohio law, at least against GMC, and (4) the loss of consortium claim could go forward. *Id.* at 457–58.

Eventually, all Defendants moved for summary judgment, pursuant to Fed.R.Civ. P. 56, on the grounds that, *inter alia*, the federal claims were barred by the applicable statute of limitations. On April 15, 1983, this Court issued an opinion agreeing with Defendants' position, holding that the federal claims were barred by applying the six-month statute of limitations found in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). *Adkins v. General Motors Corp.*, 573 F.Supp. 1188, 1201 (S.D. Ohio 1983), *aff'd*, 769 F.2d 330 (6th Cir.1985) (*Adkins II*). In the same decision, this Court dismissed the pendent state claims without prejudice, subject to any further litigation Plaintiffs might wish to pursue in the state courts. *Id.* at 1201–02. Shortly thereafter, the Court entered judgment in favor of the Defendants. On July 18, 1985, following Plaintiffs' appeal of said judgment, the Sixth Circuit Court of Appeals affirmed this Court's judgment. *Adkins v. International Union of Electrical, Radio & Machine Workers*, 769 F.2d 330, 337 (6th Cir.1985) (*Adkins III*).

Apparently following this Court's suggestion, some 817 Plaintiffs (most of whom were parties to the *Adkins* litigation in federal court) filed suit in Montgomery County Common Pleas Court on September 19, 1983 (No. 83–2596). The Complaint therein is of quite similar length and style to the Complaints filed in the federal litigation. While the *factual* contentions are quite similar, the state court Complaint does not refer to any federal statute. Instead, the Complaint sets out, in somewhat different form, the four state law causes of action set forth in the Complaints filed in federal court. Defendants (the same as those in the federal lawsuit) removed the suit (the instant action) to this Court in timely fashion, pursuant to 28 U.S.C. § 1441, contending that this Court would have original jurisdiction of the case under NLRA and the LMRA (Doc. # 1). Plaintiffs then moved to remand the matter back to state court, pursuant to 28 U.S.C. § 1447 and Fed.R.Civ.P. 81(c), on the basis that the removal was improvidently granted.

On January 20, 1984, this Court filed a Decision and Entry sustaining in part and overruling in part the Plaintiffs' Motion to Remand (Doc. # 9). *See Adkins v. General Motors Corp.*, 578 F.Supp. 315 (S.D. Ohio 1984) (*Adkins IV*). In *Adkins IV*, the Court concluded that "Plaintiffs have made assertions in their lengthy complaint

(e.g., breaches of a collective bargaining agreement, and of the duty of fair representation) which inexorably lead to the conclusion that a 'hybrid' § 301 action is being pleaded." *Id.* at 318. The Court further concluded that certain other assertions within the Complaint could give rise to an action under LMRDA § 101(a)(1). *Id.* at 319. Accordingly, this Court overruled Plaintiffs' Motion to Remand "to the extent that the state court complaint can be read as advancing claims under LMRA § 301 or LMRDA § 101." *Id.* Plaintiffs' Motion to Remand was, however, sustained with regard to the remainder of Plaintiffs' claims on the theory that said claims were *not* preempted by § 301. Subsequently, on March 9, 1984, Defendant IUE and Defendant Local 801 filed a motion with this Court seeking an Order granting summary judgment in their favor upon all of Plaintiffs' *federal* claims. Subsequently, this action was stayed pending the outcome of Plaintiffs' appeal of the *Adkins II* decision (Doc. # 15). Following the Sixth Circuit's affirmation of *Adkins II*, in a decision filed June 26, 1987, this Court sustained Defendant Union's Motion for Summary Judgment in its entirety on the grounds that Plaintiffs' federal claims were barred by the six-month statute of limitations contained in 29 U.S.C. § 160(b), and indicated that judgment would be granted in favor of all Defendants (including Defendant GMC) and against the Plaintiffs on the first and second causes of action set forth in the Plaintiffs' Complaint (Doc. # 19). In a letter attached to said decision, the Court noted that while Plaintiffs' federal claims were dismissed, the Court had granted Defendants leave to move for reconsideration of the Court's Decision remanding Plaintiffs' state claims (Doc. # 20).

On July 8, 1987, Defendants filed the Motions for Reconsideration currently before the Court (Doc. # 21; Doc. # 22). In said motions, Defendants basically assert that in light of certain recent United States Supreme Court decisions on the issue of federal preemption under § 301 of the LMRA, the Court should re-examine its Decision and Entry sustaining in part and overruling in part Plaintiffs' Motion to Re-

mand. Specifically, Defendants assert that Count Two of Plaintiffs' Complaint (which alleges misrepresentation on the part of Defendants), Count Three of Plaintiffs' Complaint (which alleges that Defendants tortiously interferred with Plaintiffs' contractual and/or business relationships), and Count Four of Plaintiffs' Complaint (which alleges that Defendants negligently and/or intentionally inflicted severe emotional distress upon Plaintiffs) are preempted by § 301 of the LMRA, and thus, are properly removable to this Court, and therefore, *not* remandable to the Montgomery County Court of Common Pleas.

At this point in time, there appears to be some confusion as to the status of Count Two of Plaintiffs' Complaint. Certain language within the Court's Decision and Entry sustaining in part and overruling in part, the Plaintiffs' Motion to Remand indicates that said motion was *sustained* with regard to Count Two of Plaintiffs' Complaint. However, as previously noted, this Court's Decision and Entry sustaining the Motion of Defendant Unions for Summary Judgment (Doc. # 19) indicates that judgment will be granted in favor of all Defendants and against the Plaintiffs on Count Two of Plaintiffs' Complaint. In order to alleviate any confusion, the Court hereby vacates its Decision and Entry sustaining the Motion of Defendant Unions for Summary Judgment as it relates to Count Two of Plaintiffs' Complaint. In this Decision, the Court will re-examine the propriety of removing Count Two, Count Three, and Count Four of Plaintiffs' Complaint from the Montgomery County Common Pleas Court.

## II. THE PROPRIETY OF REMOVAL

### A. *Preemption and § 301 of the LMRA*

Before discussing the specific claims which Defendants assert are preempted by federal law, the Court finds it necessary to provide a brief overview of the applicable law. The Court notes that since its original decision on Plaintiffs' Motion to Remand, the Supreme Court has handed down four

decisions which significantly clarify when claims brought under state law are preempted by federal labor-contract law.

■ The first in the quartet of cases analyzing the preemptive effect of § 301 of the LMRA was *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Allis–Chalmers Corp.*, the Supreme Court held that "§ 301 of the Labor Management Relations Act pre-empts a state-law tort action for bad-faith delay in making disability-benefit payments due under a collective-bargaining agreement." *Id.* at 208. In so doing, the Supreme Court noted that "[i]f the policies that animate § 301 are to be given their proper range ... the pre-emptive effect of § 301 must extend *beyond* suits alleging contract violations." *Id.* at 210 (emphasis added). "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* at 211. In determining whether a state-law claim is in fact preempted by federal labor law, the key question which must be answered is "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213. "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, *see Avco Corp. v. Aero Lodge 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), or dismissed as preempted by federal labor contract law." *Id.* at 220. Thus, in the case at bar, if it is impossible to consider one of Plaintiffs' claims, without analyzing the terms of one or more of the collective bargaining agreements, said claim must be treated as preempted by § 301.

The Court next dealt with the issue of preemption under § 301 in the case of *International Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). In *Hechler*, the plaintiff, who had been injured in the course of her employment, asserted that the defendant union had negligently breached its "duty to insure that ... [plaintiff] 'was provided safety in her work place and a safe work place' and to insure that ... [plaintiff] 'would not be required or allowed to take undue risks in the performance of her duties which were not commensurate with her training and experience.'" *Id.* 107 S.Ct. at 2164. Plaintiff admitted that the "nature and scope" of said duty was dependent upon the terms of the collective bargaining agreement between her union and her employer. *Id.* In concluding that the plaintiff's negligence claim was in fact preempted by § 301, the Supreme Court noted that the defendant union's tort liability could not be determined without considering "whether the collective-bargaining agreement in fact placed an implied duty of care on the Union...." *Id.* 107 S.Ct. at 2168. The Supreme Court found that the plaintiff's negligence claim *was* preempted because any consideration of said claim would have required interpretation of the collective bargaining agreement and there is a "need for federal uniformity in the interpretation of contract terms...." *Id.*

The Supreme Court once again dealt with the preemptive force of § 301 in the case of *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In *Caterpillar*, the Supreme Court concluded that as the plaintiff-employees' claims of breach of contract were founded upon an independent agreement, no interpretation of the collective bargaining agreement was required, and thus, said claims were *not* preempted by § 301. *Id.* 107 S.Ct. at 2431. Although the Supreme Court found there to be no preemption in *Caterpillar*, it once again emphasized that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, *and also* claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 2166–67, n. 3, 95 L.Ed.2d 791 (1987).

Finally, the Court once again examined the issue of preemption under § 301 in the recent case of *Lingle v. Norge Division of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Lingle*, the Supreme Court found that the plaintiff's state law claim for retaliatory discharge was *not* preempted by § 301, despite the fact that the plaintiff's collective bargaining agreement also provided plaintiff with a contractual remedy for wrongful discharge. The Supreme Court concluded that the plaintiff's state-law claim was " 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for section 301 pre-emption purposes: resolution of the state-law claim ... [did] not require construing the collective-bargaining agreement." *Id.* 108 S.Ct. at 1882. In other words, the Supreme Court concluded that the state claim did not turn "on the interpretation of a collective bargaining agreement for its application." *Id.* 108 S.Ct. at 1882 n. 7. Basically, the Court concluded that even in the absence of a collective bargaining agreement, the Plaintiff would have had the same right to be free from wrongful discharge. Resolution of the state-law claim simply did not require any interpretation of the collective bargaining agreement.

■ Based upon all of the foregoing, the Court concludes that in the case at bar, it cannot simply rely upon the fact that Plaintiff's claims are couched in terms of state-law violations. The Court takes special note of the fact that the above-discussed cases indicate that there are *two separate and distinct* bases for preemption. *First*, state claims involving rights which arise from a labor agreement are preempted by § 301. *Caterpillar*, 107 S.Ct. at 2431. *Second*, state claims which are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" are preempted by § 301 regardless of whether or not said claims involve rights which arise from the agreement. *Allis–Chalmers Corp.*, 471 U.S. at 220, 105 S.Ct. at 1916. The evaluation of both types of claim "is inextricably intertwined with consideration of the terms of the labor con-

tract." *Id.* at 213, 105 S.Ct. at 1912. Thus, in the case at bar, the Court must carefully consider whether any or all of Plaintiff's state law claims arise from *and/or* require the interpretation of any of the various collective bargaining agreements.

### B. *Count Two: Misrepresentation*

■ In Count Two of their Complaint, Plaintiffs assert that certain "acts, omissions, and conduct of the Defendants, jointly and severally were wrongfully motivated misrepresentations of fact to the Plaintiffs, both constructively and actually, and were the result of the intentional and/or negligent conduct of the Defendants." (Doc. # 1, Complaint, at ¶ 49). For the reasons briefly set forth below, the Court concludes that the evaluation of Count Two "is inextricably intertwined with consideration of the terms of the" collective bargaining agreements, and thus, is preempted by § 301. *Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. at 1912.

Under Ohio law, the following elements are required in order to establish fraud:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance."

*Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407, 409 (1984) (quoting *Friedland v. Lipman*, 68 Ohio App.2d 255, 429 N.E.2d 456 (Ct.App.1980) (syllabus, ¶ 1)). As virtually every fraudulent representation allegedly made by Defendants relates in one way or another to the terms of the various collective bargaining agreements, this Court must conclude that consideration of Plaintiffs' claim of fraudulent misrepre-

**1050**

sentation is "substantially dependent" upon the terms of said agreements.[2]

As noted in Plaintiffs' Memorandum in Opposition to Motion for Reconsideration, "Plaintiffs essentially claim that the negligent or intentional misrepresentations of each defendant induced Plaintiffs to enter the 1979 collective bargaining agreements." (Doc. # 32, at 12). "Plaintiffs' claim that the Unions misrepresented GM's position in 1979 contract negotiations and thereby induced them to enter into the agreements." (Doc. # 32, at 13). Plaintiffs specifically assert that "GM, IUE and 801 concerted presented, urged and proposed ... [the] agreements and modifications [of February 23, 1979] in a manner designed to insure their adoption through the permitted withholding of information necessary to meaningfully inform the 2,000 that their 'bridge agreement' rights would be impaired by an affirmative ratification." (Doc. # 1, Complaint, at ¶ 28). Plaintiffs further allege that "[i]n furtherance of ... [the] concerted plan of GM, IUE and 801 to

... substantially confine any consideration of ... [the] modifications, GM, IUE and 801 concertedly confined the scope of any circulated information regarding the proposals to the explanation and discussion of only the benefits to be derived by the persons then employed by Frigidaire while wholly ignoring and being totally silent with respect to any consequent converse detriment whatsoever to the 2,000 [i.e. the plaintiffs]...." (Doc. # 1, Complaint, at ¶ 31). While not *every* claim of fraudulent misrepresentation would be preempted by § 301, based upon the foregoing allegations, the Court concludes that the *Plaintiffs'* claims of fraudulent misrepresentation *are* in fact preempted by § 301.

It cannot be disputed that Plaintiffs' claims of fraudulent misrepresentation all relate to the various collective bargaining agreements. It would be impossible to determine whether the information provided to Plaintiffs by Defendants was false (or insufficient) without analyzing the terms of

**2.** Paragraph 15 of Plaintiffs' Complaint states: The claimed breaches as well as the tortious interference with plaintiffs' rights, contracts and employment, the intentional and negligent infliction of emotional distress upon the plaintiffs, fraul [sic] and deceit, involve and concern said defendants wrongful conduct in:
(a) the implementation and enforcement of those agreements contained in a booklet entitled "Local Agreement between Frigidaire Division, General Motors Corporation and Local 801, International Union of Electrical, Radio & Machine Workers, AFL–CIO–CLC, December 10, 1976" including without limitation the "Bridge Agreement" dated December 10, 1976 contained at pages 46–52 of said booklet;
(b) the implementation and enforcement of the National Agreement of December 10, 1976;
(c) the negotiation, manner of adoption, adoption, implementation and enforcement of "Special Memorandum of Agreement Between General Motors Corporation and the International Union of Electrical, Radio & Machine Workers, AFL–CIO–CLC and its Local 801" dated February 23, 1979;
(d) the negotiation, manner of adoption, adoption, implementation and enforcement of that "Memorandum of Agreement" between GM and IUE and 801, dated February 23, 1979, which in part provides that all employees who become laid off from Frigidaire "will have the same layoff status as if they had been laid off from Delco Air Conditioning Division except," etc.;

(e) the implementation and enforcement of the National Agreement of September 18, 1979;
(f) the negotiation, manner of adoption, adoption, implementation and enforcement of those agreements contained in a booklet entitled "Local Agreement between Chevrolet–Moraine Engine Plant, Chevrolet Motor Division, General Motors Corporation and Local 801, International Union of Electrical, Radio & Machine Workers, AFL–CIO–CLC, October 1, 1979," including without limitation the "Memorandum of Agreement" dated September 18, 1979 contained at pages 40–44 of said booklet; and
(g) the negotiation, manner of adoption, adoption, implementation and enforcement of those agreements contained in a booklet entitled "Local Agreement between Chevrolet–Moraine Assembly Plant, Chevrolet Motor Division, General Motors Corporation and Local 801, International Union of Electrica [sic], Radio & Machine Workers, AFL–CIO–CLC, October 1, 1979," including without limitation the "Memorandum of Agreement" dated September 18, 1979 contained at pages 42–46 of said booklet.
(Doc. # 1, Complaint, at ¶ 15). This statement alone indicates that there is at least some link between Plaintiffs' claims of fraudulent misrepresentation and the various collective bargaining agreements.

the various collective bargaining agreements. Basically, the Plaintiffs are asserting that they were not informed (or were misinformed) as to the potential effects of ratification of the Special Memorandum of Understanding of February 23, 1979 and certain other agreements reached on February 23, 1979. The evaluation of whether or not Defendants' representations (and/or concealments) were false "is inextricably intertwined with consideration of the terms of the labor contract[s]." *Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. at 1912. *See generally Brown v. Keystone Consol. Indus., Inc.*, 680 F.Supp. 1212, 1218 (N.D. Ill.1988).

Based upon the foregoing, the Court concludes that Plaintiffs' claims of fraudulent misrepresentation are preempted by § 301 of the LMRA. Accordingly, the Court concludes that Defendants' Motions for Reconsideration must be sustained as they relate to Count Two, and thus, that Plaintiffs' claims of fraudulent misrepresentation shall *not* be remanded to the Montgomery County Court of Common Pleas.

### C. Count Three: Tortious Interference With Contract or Business Relationship

In Count Three of their Complaint, Plaintiffs assert that Defendants tortiously interfered with certain contractual and/or business relationships. For the reasons briefly set forth below, the Court concludes that the claim of tortious interference set forth in Count Three of Plaintiffs' Complaint is preempted by § 301 of the LMRA.

The Sixth Circuit has concluded that under Ohio law a claim for tortious interference arises when "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another...." *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1127 (1981) (quoting *Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 379 N.E.2d 235, 238 (1977)), *reh'g denied,* 668 F.2d 878 (6th Cir.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). In Count Three of their Complaint, Plain-

tiffs assert that "[a]s a proximate result of the conduct of the defendant IUE, the defendant Local 801 breached its duties and agreements with the plaintiffs." (Doc. # 1, Complaint, at ¶ 75). Plaintiffs further assert that "[a]s a proximate result of the conduct of the defendant unions, the defendant General Motors did breach its expressed and implied agreements with the plaintiffs." (Doc. # 1, Complaint, at ¶ 77). Finally, Plaintiffs assert that "[a]s a proximate result of the conduct of the defendant General Motors, the defendant unions did breach their contracts, fiduciary duties and business relationships with said plaintiffs." (Doc. # 1, Complaint, at ¶ 79). The Court will consider each of these allegations seriatim.

■ Plaintiffs first assert that in order to improve its political position, Defendant IUE intentionally caused Defendant Local 801 to breach its fiduciary obligation to Plaintiffs. Basically, Plaintiffs assert that interpretation of the terms of the various collective bargaining agreements is not necessary to the determination of whether Defendant Local 801 breached duties owed to Plaintiffs under the Union Constitution or Charter. The Court cannot agree with said assertion. Even assuming *arguendo,* that Defendant Local 801's duty of fair representation does arise under an agreement other than the various collective bargaining agreements, the alleged breach of said duty is "inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Allis–Chalmers Corp.,* 471 U.S. at 213, 105 S.Ct. at 1912. Defendant Local 801 allegedly breached its fiduciary relationship by promoting changes in Plaintiffs' collective bargaining agreements which were allegedly detrimental to Plaintiffs and by allegedly concealing the fact that said changes were in fact detrimental. An analysis of whether or not Defendant Local 801 breached its duty of fair representation requires an analysis of the terms of the collective bargaining agreements. Without such an analysis, it would be impossible to determine the impact of Defendant Local 801's actions upon the Plaintiffs. Accordingly, the Court concludes that Plaintiffs' claim that Defendant IUE

tortiously interfered with the business and/or contractual relationship between Defendant Local 801 and Plaintiffs is preempted by § 301 of the LMRA.

■ Plaintiffs next assert that Defendant IUE and Defendant Local 801 intentionally caused Defendant GM to breach its duties to Plaintiffs, including those under "implied agreements" between Defendant GM and Plaintiffs. The Court concludes that Plaintiffs' assertion is without merit as there is *no* relationship between Defendant GM and Plaintiffs separate and apart from that created by the collective bargaining agreement. Plaintiffs' business relationship with Defendant GM is governed by the collective bargaining agreements. Even assuming *arguendo*, that Plaintiffs do possess some "implied" rights, said rights could only have arisen from the employment relationship, and said relationship arises from the various collective bargaining agreements.[3] Further, it must be remembered that Plaintiffs' chief complaint is that GM modified the terms of the collective bargaining agreements. Even assuming, *arguendo*, that some implied agreement, separate and apart from the collective bargaining agreements, existed between Plaintiffs and Defendant GM, it would be impossible to determine whether said agreement was breached by the modification of the terms of the collective bargaining agreements without analyzing and interpreting the terms of the collective bargaining agreements. Based upon the foregoing, the Court concludes that Plaintiffs' claim that Defendant Unions tortiously interfered with the contractual and/or business relationship of Plaintiffs and Defendant GM "is inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. at 1912. Accordingly, the Court concludes that said claims are in fact preempted by § 301 of the LMRA, and thus, said claims shall *not* be remanded to state court.

■ Finally, the Plaintiffs assert that Defendant GM intentionally caused Defendant IUE and Defendant Local 801 to breach their duties to Plaintiffs, including "fiduciary duties and business relationships." Once again, the Plaintiffs argue that the Defendant Unions' duty to represent Plaintiffs fairly arises out of agreements other than the collective bargaining agreement. Even assuming *arguendo* that said argument is correct and that Defendant Unions do owe Plaintiffs duties which do not arise under the various collective bargaining agreements, the Court concludes that Plaintiffs' claims of tortious interference are "substantially dependent upon analysis of the terms" of the various labor contracts. *Id.* at 220, 105 S.Ct. at 1916. Plaintiffs basically assert that the Defendant Unions' actions in promoting the modification of the collective bargaining agreements breached Defendant Unions' duty of fair representation. The propriety of Defendants' actions simply cannot be determined in the absence of an analysis of the terms of the collective bargaining agreements before and after the modification of February 23, 1979. Based upon the foregoing, the Court concludes that Plaintiffs' claims that Defendant GM tortiously interfered with the contractual and/or business relationship of Plaintiffs and Defendant Unions are "inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Id.* at 213, 105 S.Ct. at 1912. Accordingly, the Court concludes that said claims are preempted by § 301 of the LMRA.

Based upon all of the foregoing, the Court concludes that Defendants' Motions for Reconsideration must be sustained as they relate to Plaintiffs' claims under Count Three of Plaintiffs' Complaint, and thus, said claims shall *not* be remanded to the Montgomery County Court of Common Pleas.

**3.** The Court notes that this is *not* a situation in which the Plaintiffs assert that a duty created by statute has been breached. In situations in which a duty is created by statute as well as by contract, it is not necessary to refer to the contract in order to determine whether said duty has been breached. *See Lingle v. Norge Division of Magic Chef, Inc.*, — U.S. —, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

### D. Count Four: Negligent or Intentional Infliction of Emotional Distress

In Count Four of their Complaint, Plaintiffs assert that "the conduct of the defendants, jointly and severally, was negligent and/or intentional and/or reckless and proximately caused severe emotional distress to the plaintiffs." (Doc. # 1, Complaint, at ¶ 89). For the reasons briefly set forth below, the Court concludes that Plaintiffs' claims of intentional and/or negligent infliction of emotional distress are *partially* preempted by § 301 of the LMRA.

Under Ohio law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) of Torts § 46(1)(1965)). The Ohio courts further recognize that "[a] cause of action may be stated for the negligent infliction of serious emotional distress." *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 761 (1983) (syllabus). In the interest of clarity, the Court will address each of the possible claims of negligent and/or intentional infliction of emotional distress set forth in Plaintiffs' Complaint individually.[4]

■ In ¶ 25 of their Complaint, Plaintiffs assert that Defendant GM, Defendant IUE and Defendant Local 801 "proposed modifications of the Local Seniority Agreement of Dec. 10, 1976 and of the Bridge Agreement of December 10, 1976, together with the urging that the same be adopted." If the Plaintiffs are claiming that in proposing this modification, Defendants caused Plaintiffs' emotional distress, the Court concludes that said claim is preempted by § 301 of the LMRA. Such a claim is "inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Allis–Chalmers Corp.*, 471 U.S.

at 213, 105 S.Ct. at 1912. It would be impossible to determine whether the Defendants' conduct was outrageous and/or whether Defendants' actions inflicted emotional distress without considering the terms of the existing collective bargaining agreements and the proposed changes to said agreements.

■ In ¶ 27 of their Complaint, Plaintiffs assert that "[i]n working out and urging the agreements and modifications proposed on February 22, 1979, GM, IUE and 801 withheld from their course of decision-making any good faith consideration and weighing of the rights, interests, and job security considerations of and as to any of ... [the Plaintiffs], and the ... rational expectation of ... [the Plaintiffs]...." If the Plaintiffs are claiming that the Defendants' failure to consider the rights of Plaintiffs caused Plaintiffs emotional distress, the Court concludes that said claim is preempted by Section 301 of the LMRA for said claim is "inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Id.* at 213, 105 S.Ct. at 1912. Defendants' conduct simply cannot be judged in a vacuum. The emotional impact of Defendants' actions cannot be gauged without analyzing how the terms of the collective bargaining agreements were changed by the modification.

■ In ¶ 28 of their Complaint, Plaintiffs assert that the Defendants "concertedly presented, urged and proposed ... [the] agreements and modifications in a manner designed to insure their adoption through the permitted withholding of information necessary to meaningfully inform the ... [plaintiffs] that their 'bridge agreement' rights would be impaired by an affirmative ratification." If the Plaintiffs are claiming that this alleged withholding of information by Defendants caused Plaintiffs emotional distress, the Court concludes that said claim must be preempted by § 301 of the LMRA as the evaluation of such a claim "is extricably intertwined with

4. The Court notes that it expresses no opinion as to whether Plaintiffs' assertions state a claim upon which relief can be granted under Ohio law. Instead, the Court seeks to determine

whether or not Plaintiffs' claims of negligent and/or intentional infliction of emotional distress are preempted by § 301.

consideration of the terms of the [various] labor contract[s]." *Id.* It would be impossible to determine what information should have been provided by Defendants without considering the terms of the existing collective bargaining agreements and the proposed changes to said agreements.

■ In ¶ 30 of their Complaint, Plaintiffs assert that "[p]ursuant to the concerted plan of . . . [Defendants] to substantially confine any consideration of the . . . modifications . . . [to those working at Frigidaire] circulation of the February 21, 1979 issue of '801 News,' . . . was extensively made and accomplished among . . . [those working at Frigidaire] but not among . . . [the plaintiffs]. . . . [and that] such other written notification as occurred to give notice of the special membership meeting and voting . . . was substantially confined to . . . [those working at Frigidaire]." If the Plaintiffs are claiming that Defendants' alleged conduct in concealing the fact that a vote was to be held caused the Plaintiffs emotional distress, the Court concludes that said claim is *not* preempted by § 301 of the LMRA. Regardless of whether the proposed changes to the collective bargaining agreements would have a major or minor effect upon Plaintiffs, it could be argued that Defendants' alleged conduct in denying Plaintiffs the right to participate in decision making caused Plaintiffs emotional distress.

■ In ¶ 31 of their Complaint, Plaintiffs allege that Defendants circulated information concerning the benefits of modification to Frigidaire employees but failed to circulate information concerning the potential detriments to Plaintiffs. If Plaintiffs are claiming that Defendants caused Plaintiffs emotional distress by failing to provide said information, the Court concludes that Plaintiffs' claim is preempted by § 301 of the LMRA as it is "inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Id.* Once again, it is important to note that it is impossible to determine what information the Defendants should have provided without interpreting the terms of the then-exist-

ing cooperative bargaining agreements and the proposed changes to said agreements.

■ Paragraph 31 of Plaintiffs' Complaint also contains Plaintiffs' assertion that in order to enhance the probability that Plaintiffs would not participate in the ratification vote and to "diminish any comprehensive consideration" of the proposed changes, Defendants "inordinately curtailed the time lapse between the conclusion of their negotiations . . . and a ratification. . . ." If the Plaintiffs are claiming that the Defendants alleged conduct in denying Plaintiffs the right to participate in the ratification decision caused Plaintiffs emotional distress, the Court concludes that said claim is *not* preempted by § 301 of the LMRA. Once again, an analysis of the terms of the collective bargaining agreements and the proposed changes to said agreements is unnecessary to a determination as to whether Defendants' conduct could have caused Plaintiffs emotional distress.

■ In ¶ 33 of their Complaint, Plaintiffs assert that Plaintiffs were "effectively foreclosed and disenfranchised from any opportunity to persuasively urge their interests and concerns, from any meaningful participation in either the consideration or vote upon . . . [the] proposed agreements and modifications. . . ." Once again, if the Plaintiffs are claiming that Defendants' conduct in denying them the right to attend the ratification meeting caused Plaintiffs emotional distress, the Court concludes that said claim is *not* preempted by § 301.

■ In ¶ 35 of their Complaint, Plaintiffs assert that the Defendants caused the submission for approval of the Memorandum of Agreement of September 18, 1979. If the Plaintiffs are claiming that the fact that Defendants proposed a modification of the collective bargaining agreement (and/or the fact that said proposal was adopted) caused Plaintiffs emotional distress, the Court concludes that said claim is preempted by § 301 of the LMRA for the evaluation of said claim "is inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Id.* It would be impossible to determine whether

this change could in fact cause Plaintiffs' emotional distress without interpreting the terms of the collective bargaining agreements as they existed prior to the change and following the change.

In ¶ 36 of their Complaint, Plaintiffs assert that the ratification vote of September 18, 1979, took place "without any notification, access or opportunity having been afforded to any of [the Plaintiffs] ... to meaningfully participate either in the consideration of such submission for approval or the vote conducted thereon." If the Plaintiffs are claiming that Defendants caused Plaintiffs' emotional distress by denying Plaintiffs the right to fully participate in decision making, the Court concludes that Plaintiffs' claim is *not* preempted by § 301 of the LMRA. This claim would not require the interpretation of the various collective bargaining agreements.

In conclusion, there is a distinction between claims asserting that the terms of a modification or the failure of a company or Union to adequately disclose the terms of a proposed modification caused a worker emotional distress, and the claim that the failure to allow a worker to participate in decision making caused said worker emotional distress. The former claims simply cannot be analyzed without interpreting the terms of the existing and proposed collective bargaining agreements; same are, therefore, preempted by § 301 of the LMRA. The latter type of claim is not dependent upon an interpretation of the terms of the existing and proposed collective bargaining agreement; same are, therefore, not so pre-empted. Regardless of whether the impact of a particular vote is large or small, the fact that one is deliberately excluded from participating in said vote could be distressing and constitute emotional distress.

Based upon the foregoing, the Court concludes that ¶¶ 25, 27, 28, 35, and that portion of ¶ 31 relating to the circulation of information contain claims which are "inextricably intertwined with consideration of the terms of the [various] labor contract[s]", and thus are preempted by § 301

of the LMRA. Said claims will *not* be remanded to state court. The Court concludes that the remainder of the claims for negligent and/or intentional infliction of emotional distress contained within Plaintiffs' Complaint (i.e. those contained in ¶¶ 30, 33, 36 and that portion of ¶ 31 relating to the denial of Plaintiffs' right to participate in the ratification vote) are *not* preempted by § 301 and, accordingly, will be remanded to state court.

Accordingly, the Court concludes that Defendants' Motions for Reconsideration must be sustained in part and overruled in part as they relate to Count Four. Those claims contained in ¶¶ 25, 27, 28, 35, and that portion of ¶ 31 relating to the circulation of information shall *not* be remanded; the remainder of the claims contained in Count Four (as set forth above) shall be remanded.

### III. CONCLUSION

In sum, the Court has concluded that Defendants' Motions for Reconsideration must be and hereby are sustained as they relate to Count Two and Count Three of Plaintiffs' Complaint and as they relate to ¶¶ 25, 27, 28, 35 and that portion of ¶ 31 relating to the circulation of information of Count Four of Plaintiffs' Complaint. Counts Two and Three and that portion of Count Four will *not* be remanded to state court. The Court has further concluded that Defendants' Motions for Reconsideration must be and hereby are overruled as they relate to the remainder of Count Four of Plaintiff's Complaint (¶¶ 30, 33, 36 and a portion of # 31). Those portions of Count IV will be remanded to state court. In addition, the Court has concluded that the Court's Decision and Entry sustaining the Motion of Defendant Unions for Summary Judgment (Doc. # 19) must be vacated as it relates to Count Two of Plaintiff's Complaint.

Finally, after due consideration, the Court has concluded that Plaintiffs' Motion for Costs (Doc. # 11) must be and hereby is overruled in its entirety. This Court simply cannot conclude that an award of costs would be just in this case. The vast major-

ity of Plaintiffs' claims were properly removed. Basically, only three and one-half paragraphs out of Plaintiffs' entire Complaint were remanded. It would be unfair to penalize Defendants for their inability to sever said paragraphs from the remainder of the claims which were properly removed.

### IV. FURTHER PROCEDURES ORDERED OF THE DEFENDANTS

The Defendants have asserted that those claims preempted by § 301 of the LMRA (i.e., those found in Count Two, Count Three and that portion of Count Four related to ¶¶ 25, 27, 28, 35 and a portion of ¶ 31) are barred by the six-month statute of limitations established by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The Court hereby grants Defendants twenty (20) days from the entry of this decision to file a properly documented motion for summary judgment to that effect.

The above stated motion for summary judgment will be briefed according to Local Rule of Court 4.0.2. Plaintiffs shall have twenty days from date of service to file any memoranda contra said motion. Any reply memoranda should be filed within seven days of the memoranda contra.